Fuld, J.
The petitioners, two life insurance companies, brought this article 78 proceeding to annul a regulation (No. 27A) of the Superintendent of Insurance with respect to premium rates for credit life insurance, promulgated pursuant to sections 154 and 204 of the Insurance Law. The court at Special Term granted the application and annulled the regulation. The Appellate Division unanimously reversed and dismissed the petition.
A prominent feature of modern installment buying has been the growth of credit life insurance to pay off any balance remaining on a retail installment contract upon a buyer’s death or disablement before the end of the contract term. Prior to 1958, the premium rates and policy forms for such credit life *528 insurance were not subject to thé approval of the Superintendent of Insurance as were those for accident or health insurance pursuant to section 154, subdivision 1, of the Insurance Law. As a result, premium rates for credit life insurance-—which, under section 302, subdivision 6, of the Personal Property Law, may be charged against the buyer — were often excessive and there was a great variance in rates ‘ ‘ without apparent reason ’ ’ (Report of Joint Legislative Committee on Commerce and Economic Development, N. Y. Legis. Doc., 1958, No. 84, pp. 65-66, 75).
It was to correct these abuses in the credit life insurance field that the Legislature in 1958 enacted the amendments to sections 154 and 204 of the Insurance Law here involved. As indicated above, subdivision 1 of' section 154 had required the filing of accident "or health insurance policy forms and rates with the Superintendent and their approval by him. By the addition of subdivision 7 to that section, the same requirements were prescribed, in more forceful terms, for credit life insurance. Subdivision 7 recites that, “ Without limiting his other powers and duties under this section, the superintendent shall not approve any such forms or premium rates if such premium rates are unreasonable in relation to the benefits provided ” and authorizes the Superintendent “from time to time” to “ prescribe, in writing, official regulations ” dealing with credit insurance. Subdivision 1 (par. [c]) of section 204, which deals with group life insurance premium rates, was similarly amended and contains almost identical provisions for the Superintendent’s approval of rates and his right to make occasional official regulations. The provisions with respect to written regulations are in accord with the general powers granted the Superintendent in section 21 of the Insurance Law ‘ ‘ to prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter ”, including regulations “effectuating any power, given to him” thereunder (subd. [b]).
Pursuant to these statutory amendments, and after notice and an industry-wide hearing held on August 5,1958, the Superintendent promulgated Regulation 27A. In addition to general rules for filing and approval, subdivision A of section 7 of the regulation set forth premium rates, later referred to as “ standards ” for premium rates, based on studies by the Insur *529 anee Department, which, the section declares, “will he considered adequate and not unreasonable in relation to the benefits provided ”. It was chiefly because of these “ standards ” that the petitioners, in September, 1958, brought the present proceeding to annul the regulation, pointing out that the Superintendent had never set forth any such rates for regular life and accident or health insurance rates under subdivision 1 of section 154. They contended that the regulation thereby authorized the Superintendent to fix rates, a power never granted him under the statutes, and that the rates which he prescribed would force them to discriminate among policyholders.
In December, 1958, more than three months after the hearing and probably as a result of the petitioners’ proceeding, the Superintendent amended Regulation 27A by adding a new subdivision C to its section 7 to permit insurers to establish independently factors or conditions to justify higher rates than those suggested by the Superintendent in subdivision A of section 7. Thus, subdivision C provided in part:
“ Nothing herein, however, shall preclude an insurer from filing for the approval of the Superintendent of Insurance rates or identifiable charges which exceed the standards in A and B, above, provided such insurer shall demonstrate to the Superintendent of Insurance that the filing conforms to the standards prescribed in subsection 7 of Section 154 of the Insurance Law.”
The new subdivision C still did not satisfy the petitioners. They filed a supplemental petition to annul Regulation 27A upon the same grounds as those previously advanced.
Before treating the issues raised by the petitioners, we note the Superintendent’s argument that they are not entitled to maintain the present proceeding because, until they apply for approval of their rates, they are not aggrieved by the regulation. It is our view, however, that section 34 of the Insurance Law provides that any “ regulation ” as well as any order or decision of the Superintendent is subject to article 78 review. The statute does not require that only action taken in pursuance of a regulation may be reviewed, and we deem it clear that insurers obliged to comply with the regulation are entitled to question its validity.
Section 154 (subd. 7) and section 204 (subd. 1, par. [c]) of the Insurance Law authorize the Superintendent to disap *530 prove premium rates which are “unreasonable in relation to the benefits provided” and direct him to prescribe regulations for determining procedures and terms applicable to credit insurance policies. Whether or not this permits him to make or fix rates, it is well within his statutory powers to suggest reasonable ones (Beg. 27A, § 7, subd. A) as a sort of guide or “bench mark ” for insurers, while affording them freedom to show that higher rates would not be unreasonable (§ 7, subd. C). Certainly, there is no difference between the direction in section 154, subdivision 7, that the Superintendent ‘ ‘ shall not approve ’ ’ rates which are unreasonable in relation to benefits and the converse provision in section 7, subdivision C, that an insurer may obtain the Superintendent’s “ approval” upon demonstrating that its suggested rates, though not adhering to the “ standards ” proposed by the Insurance Department, do “ conform to the standards prescribed ” in section 154, subdivision 7.
The statutory command contained in the amendments to sections 154 and 204 that the Superintendent ‘ ‘ shall not approve ’ ’ ‘ ‘ unreasonable ’ ’ credit insurance rates is an additional and more emphatic delegation of power than that found in section 154, subdivision 1, namely, that the Superintendent “ may disapprove ” rates filed by insurers. As Presiding Justice Bergax, writing for the Appellate Division, observed, ‘ ‘ the power to make wholly inoperative a premium rate proposed by an insurer is manifest; and while this in form may be a vetoing or negativing form of public power, it is clear that no effective or lawfully chargeable premium rate can come into existence without the affirmative act of the Superintendent.” Indeed, the opinion continued, “ Whether the Superintendent makes rates, or allows rates which he approves to come into force, seems something of an exercise in semantics.”
Instances in which this court has upheld special rules made pursuant to broad statutory powers granted administrative officials are numerous. (See, e.g., Matter of Ross v. Macduff, 309 N. Y. 56; Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327, 331; Matter of Marburg v. Cole, 286 N. Y. 202; see, also, Gair v. Peck, 6 N Y 2d 97.) In the Ross case (309 N. Y. 56, supra), the court upheld and applied a “ point system ” adopted by the Bureau of Motor Vehicles to determine whether an operator was a “persistent violator” within the meaning of *531 the statute for purposes of license suspension or revocation. In Ross the point system was, in a sense, a statement in advance by an administrative agency of standards applied by it in passing upon the statutory standard for determining a ‘1 persistent violator ’ ’. Likewise, in the present case, the Superintendent’s declaration of standards is simply a declaration in advance that certain rates are so plainly reasonable 1 £ in relation to the benefits provided” (§ 154, subd. 7) as to require no further detailed consideration by the Superintendent in the ordinary rate application.
In point of fact, a standard announced in advance is often in aid of sound administration and the fair exercise of public power. In the case before us, it will afford an insurer a shortcut method of securing approval for premium rates. . (Cf., e.g., Gair v. Peck, 6 N Y 2d 97, supra; Securities Comm. v. Chenery Corp., 318 U. S. 80, 92; 332 U. S. 194.) In the Gair case, for instance, this court upheld the rule promulgated by the Appellate Division fixing a sliding scale of attorneys’ contingent fees deemed fair and reasonable and declaring that fees in excess of the scale would constitute ££ the exaction of unreasonable and unconscionable compensation ” (6 N Y 2d, at p. 101). This did not, though, preclude the grant of larger compensation in the event of 11 extraordinary circumstances ’ ’ rendering the scale allowances inadequate.
The petitioners contend, however, that Regulation 27A, and in particular its subdivision C of section 7, shifts the burden of proof with respect to. reasonableness of rates from the Superintendent to the insurer. More specifically, they argue that, although it is up to the Superintendent, when he disapproves rates filed by the insurer, to show that they are unreasonable ££ in relation to the benefits provided ” (§ 154, subd. 7), it is incumbent upon the insurer, by reason of subdivision 0, to ‘1 demonstrate ’ ’ that rates higher than those contained in the standards specified in subdivision A ‘£ conform ’ ’ to the criterion laid down in section 154, subdivision 7. The point does not impress us. The fact is that, with or without the regulation, the insurer must establish by ordinary principles of administrative law that its filing should be approved, in other words, that such filing meets the statutory standards. Whether the Superintendent fails to ££ approve ” premium rates filed by an insurer or *532 finds that the insurer has failed to ‘1 demonstrate ’ ’ that its proposed rates, higher than the suggested standards, are reasonable, the insurer must, in either ease, seek judicial review in order to annul the Superintendent’s determination. In either event, the insurer has the burden, under familiar rules governing-administrative review, of demonstrating that the Superintendent did not base his determination on adequate proof. (See, e.g., Matter of New York Compensation Ins. Rating Bd. v. Superintendent of Ins. of State of N. Y., 8 A D 2d 455, 459, affd. 8 N Y 2d 803; Matter of Ebenstein v. Pink, 275 N. Y. 613.)
In short, whether an insurer files its rates for approval or seeks to prove that the statutory conditions have been met, the requirement for obtaining such approval is the same. The premium rates must be not ‘ ‘ unreasonable in relation to the benefits provided”. Subdivision 0 of section 7 is only a restatement of the insurer’s statutory responsibility and does not alter its obligation.
The petitioners make a number of arguments addressed to the merits of subdivision A of section 7, contending that it is discriminatory, that it eliminates competition and that it contains arbitrary and unreasonable restrictions on coverage. Since, however, the insurer has the choice of proceeding under subdivision C, as to which none of these contentions is applicable, nothing- is to be gained by a detailed consideration of them.
Nor is there any substance to the petitioners’ further argument that section 154 (subd. 7) and section 204 (subd. 1, par. [c]), as construed by the Appellate Division, contain no standards to guide the Superintendent in promulgating Regulation 27A and, consequently, effect an unconstitutional delegation of legislative power (N. Y. Const., art. Ill, § 1). The standards laid down in these statutes, that the premium rates approved, be not “ unreasonable-in relation to the benefits provided ”, are fully as specific and clear as other statutory standards which this court has upheld. (See, e.g., Matter of Ross v. Macduff, 309 N. Y. 56, supra [“ habitual or persistent violation ” of the Vehicle and Traffic Law]; see, also, Matter of Union Ins. Agency v. Hols, 1 A D 2d 945, motion for leave to appeal den. 1 N Y 2d 644 [“ untrustworthiness ” of an insurance agent]; Matter of Bell v. Board of Regents, 295 N. Y. 101 [‘ ‘ unprofessional conduct ”].) In view of the need for practicality and flexibility *533 in laying down standards in areas involving administrative detail and complexity (see, e.g., Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164, 169), it may not "be said that the present standards are either so vague or otherwise inadequate as to amount to an unconstitutional delegation of legislative power.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Order affirmed.